UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
FREDERICK CHANNING,                 )
                                    )
            Plaintiff,              )
                                    )
     v.                             )    C.A. No. 18-004 WES
                                    )
TOWN OF SOUTH KINGSTOWN, et al.,    )
                                    )
            Defendants.             )
_____)

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 23. For the reasons that follow, Defendants' Motion is DENIED as to the claim of excessive force against Defendant John T. D'Agostino and GRANTED in all other respects.

I.  BACKGROUND

Following a disputed series of events, D'Agostino (a patrolman with the South Kingstown Police Department), Plaintiff Frederick Channing, and a car all ended up at the driveway of 260 Columbia Street. See Defs.' Statement of Undisputed Facts ("SUF") ¶¶ 1-6, ECF No. 23-2; Pl.'s Statement of Disputed Facts ("SDF") ¶¶ 1-6, ECF No. 27. At some point, Defendants Montafix Houghton and Jerome Gillen also arrived on the scene. SUF ¶ 9; SDF ¶ 9. Based on his initial observations of Channing, D'Agostino believed that Channing may have been operating the vehicle while intoxicated.

SUF ¶ 10; SDF ¶ 10. D'Agostino approached Channing and asked for his registration and insurance. SUF ¶ 11; SDF ¶ 11. According to (vaguely) disputed testimony, D'Agostino smelled a strong odor of alcohol on Channing, who forgot what he was doing while trying to retrieve the documents, and who could not remember where he was coming from. SUF ¶ 12-15; SDF ¶ 12-15. D'Agostino then took Channing through a series of field sobriety tests, which Channing allegedly failed. SUF ¶ 16-26; SDF ¶ 16-26. D'Agostino therefore decided to arrest Plaintiff on suspicion of driving under the influence of alcohol. SUF ¶ 27.[1]

Next came the focus of our inquiry: the handcuffing. According to D'Agostino, he handcuffed Channing without incident, double locking the handcuffs per standard protocol. SUF ¶¶ 29-31. Channing "vaguely" remembers a conflicting series of events. SUF ¶ 44; SDF ¶ 44. He states that the handcuffs "pinched" him, causing him to jump, which, in turn, led D'Agostino to apply greater force. SDF ¶ 29. He also maintains that D'Agostino twisted his arm in the process and that he experienced shooting pain and numbness in his arms, wrists, and hands during the arrest. SUF ¶ 45; SDF ¶ 45.

---

[1] Although Plaintiff disputes that he drove while intoxicated, he does not meaningfully contest that he was arrested based on D'Agostino's belief that he had committed that crime. SDF ¶ 27.

The next day, according to evidence submitted by Channing, he sought treatment for numbness, bruising, redness, and intermittent pain in his arm and wrists. SDF ¶ 29. Despite ongoing treatment, he continues to suffer from "chronic pain in both hands, both wrists, and [his] right arm." Id. He has also submitted a report from an expert on police practices who opines that D'Agostino used unreasonable and improper handcuffing techniques, causing Channing's injuries. See Rivera Suppl. Report, ECF No. 23-9.

II. LEGAL STANDARD

To succeed on their Motion, Defendants must show that "there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views "the facts in the light most favorable to the nonmoving part[y]." Pippin v. Blvd. Motel Corp., 835 F.3d 180, 181 (1st Cir. 2016) (quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 157–58 (1st Cir. 2016)). However, "a nonmovant cannot rely merely upon conclusory allegations, improbable inferences, and unsupported speculation." Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016) (quoting Pina v. Children's Place, 740 F.3d 785, 795 (1st Cir. 2014)).

Where, as here, the ultimate burden of proof in the case lies with the nonmovant, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

3

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant makes that showing, the nonmovant must demonstrate the existence of a genuine issue of material fact requiring trial. Dow v. United Bhd. of Carpenters and Joiners of Am., 1 F.3d 56, 58 (1st Cir. 1993).

III. DISCUSSION

    A.   Daubert

In support of his Opposition to Defendants' Motion for Summary Judgment, Channing submits the expert report of Richard Rivera, M.S. See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. Summ. J. ("Pl.'s Opp'n") 7-8, ECF No. 26-1.[2] Defendants argue that Rivera's opinions do not meet the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and therefore cannot be considered. See Mem. Supp. Mot. Summ. J. 11, ECF No. 23-1.

Rule 702 of the Federal Rules of Evidence provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d)

---

    [2] Although the report was co-authored by Elena Gonzalez, Channing seeks to offer expert testimony from Rivera only.

the expert has reliably applied the principles and methods to the facts of the case.

To satisfy this inquiry, "an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession." Zachar v. Lee, 363 F.3d 70, 75–76 (1st Cir. 2004) (quoting SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp., 188 F.3d 11, 25 (1st Cir. 1999)). Any type of "technical or otherwise specialized knowledge" will suffice. Id. (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)).

Rivera has multiple decades of experience as a police officer, police researcher, and consultant on a variety of police-related topics. See Rivera Curriculum Vitae 1-2 (ECF No. 23-9 at 95-96). His master's and bachelor's degrees are both in the field of criminal justice, and he has published several papers on police practices. See id. at 1, 3-4 (ECF No. 23-9 at 95, 97-98). Thus, based on his education, training, and experience, the Court concludes that Rivera has expertise in policing generally, including the usage and dangers of handcuffs.

Here, the key issue for the jury to determine will be whether D'Agostino used excessive force in handcuffing Channing. In other words, did the manner in which D'Agostino applied the handcuffs unreasonably expose Channing to a risk of serious injury? Clearly, the mechanisms, risks, and proper procedures involved with

5

handcuffs fall outside the ken of the average juror. Thus, Rivera's technical knowledge in this area would assist the jury in determining multiple facts at issue.

Moreover, the opinions contained in Rivera's report are based on reliable principles and methods derived from handcuff-related literature - including manuals, books, and standards from the National Institute of Justice – and Mr. Rivera's substantial experience in the field of policing. <u>See</u> Rivera Suppl. Report 6-7 & nn.7-14. For the most part, the Court concludes that Rivera's handcuff-related opinions stem from the application of these reliable principles to sufficient facts and data.

However, there is one exception: Rivera's ultimate conclusion that "[t]here exists a causal link between the misapplication of handcuffs and harms suffered by Mr. Channing." <u>Id.</u> at 3. There is no direct evidence (besides D'Agostino's testimony that he followed standard procedures) regarding the exact manner in which the handcuffs were applied. Thus, Rivera's opinion as to the techniques utilized by D'Agostino is necessarily based on inference. Despite the complexity of reconstructing these events based on spotty evidence, Rivera's report does not reveal that his inferential leap is based on reliable principles or methods (e.g., studies or personal experiences with large numbers of handcuffing incidents, with varying techniques, and the injuries or lack thereof that resulted from those respective

6

techniques).  Accordingly, Rivera's ultimate conclusion lacks a reliable factual basis, a reliable principle, or both. Nonetheless, with this one important exception, the Court concludes that Rivera's report is properly considered.[3,4]

B.  Excessive Force

Defendants argue that Channing has failed to show that D'Agostino utilized excessive force during the arrest.  See Mem. Supp. Defs.' Mot. Summ. J. 7-12.  Defendants further contend that D'Agostino is protected by qualified immunity because any constitutional right that may have been violated was not clearly established.  Id. at 12-15.

To determine whether D'Agostino is shielded by qualified immunity, the Court applies the familiar two-prong analysis.  See Mitchell v. Miller, 790 F.3d 73, 77 (1st Cr. 2015) (quotation marks and citation omitted).  Channing must show (1) that D'Agostino violated a constitutional right and (2) that the right was clearly established.  See id.  These related questions "need not be

---

[3] Defendants do not argue that Rivera's opinions regarding the broader policies and practices of the South Kingstown Police Department fail to vault the Daubert bar.  See Mem. Supp. Mot. Summ. J. 11.  For the reasons set forth below, however, Plaintiff's policy and practice claims do not survive summary judgment, so the Court need not address this issue.

[4] During oral argument on September 9, 2020, Defendants made an Oral Motion for Reconsideration of the Court's Order denying Defendants' Motion to Strike Plaintiff's Expert Witness, ECF No. 21.  For the reasons stated, the Oral Motion for Reconsideration is granted in part and denied in part.

7

considered in any particular order . . . ." Raiche v. Pietroski, 623 F.3d 30, 35 (1st Cir. 2010).

For a claim of excessive force via handcuffing, "a plaintiff must establish that the defendant's actions in handcuffing [the plaintiff] were objectively unreasonable in light of the circumstances and the facts known to the officer at the time." Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). The reasonableness of the officer's actions is "viewed from the perspective of a prototypical officer confronted with the same or similar circumstances." Id. (citing Graham, 490 U.S. at 396). This inquiry must respect the fact that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.

In Calvi, the plaintiff – who had reportedly brandished a knife just before the officers' arrival - claimed that the police officer should have handcuffed her hands in front of her (instead of behind her back) because she had a hand deformity. See 470 F.3d at 428. The First Circuit held that the officer did not use unconstitutional force because "[s]tandard police practice called for cuffing an arrestee's hands behind her back and [the officer's] decision not to deviate from this practice was a judgment call, pure and simple." Id. Based on that holding, this Court concludes

that where an officer unreasonably deviates from standard police handcuffing protocols designed to protect arrestees, and the deviation causes physical injury, the officer has violated a clearly established Fourth Amendment right to be free from excessive force.[5]

Here, D'Agostino testified that he handcuffed Channing's arms behind his back, checked for tightness, and double locked the cuffs, as he had been trained to do. SUF ¶ 29-30; D'Agostino Dep. 66-70, ECF No. 23-4. Although Channing has no direct evidence to the contrary (which is unsurprising given that the main event

---

[5] Cf. Fernandez-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 327 (1st Cir. 2015) (holding that arrest did not constitute constitutional violation, in part because there was "no evidence in the record that [the officer's handcuffing] technique deviated from standard police practice" (citing Calvi 470 F.3d at 428)); Hunt v. Massi, 773 F.3d 361, 370 (1st Cir. 2014) ("In this circuit, the controlling case is [Calvi,] in which we found no constitutional violation when officers handcuffed an allegedly injured arrestee according to standard police practice."); Cardoso v. City of Brockton, CIV.A. 12-10892-DJC, 2014 WL 6698618, at *15 (D. Mass. Aug. 11, 2014) (stating that no excessive force was demonstrated where, inter alia, there was "no evidence that plaintiff injured his wrist"); see also Aceto v. Kachajian, 240 F. Supp. 2d 121, 126–27 (D. Mass. 2003) (holding to be clearly established "that when a non-threatening, non-flight-risk, cooperating arrestee for a minor crime tells the police she suffers from an injury that would be exacerbated by handcuffing her arms behind her back, the arrestee has a right to be handcuffed with her arms in front of her even if the injury is not visible"); McPherson v. Auger, 842 F. Supp. 25, 30 (D. Me. 1994) ("If a jury believes Plaintiff's version of events, it could determine that Defendant handcuffed Plaintiff's wrists too tightly and then refused to loosen the handcuffs despite verbal complaints and crying and that an objectively reasonable officer would not view such use of force as necessary.").

9

occurred behind his back), he testified at his deposition that the handcuffing cause immediate pain, that he jumped in response, and that D'Agostino applied greater force in response. SDF ¶ 29. After being placed in a police vehicle, Channning "remember[s] . . . [the police officers] saying something like that didn't go well." Id. ¶ 45. Moreover, Channing avers that he suffered numbness and pain following the arrest, and that some symptoms have lingered despite medical treatment. Id. ¶ 29. Thus, a reasonable jury could conclude based on circumstantial evidence that D'Agostino's application of the handcuffs caused Channing's injuries.

Additionally, Rivera opines that, absent resistance from an arrestee, handcuffs should not cause injury if the officer properly applies the handcuffs and conforms with standard protocols. See Rivera Suppl. Report 9-10. Rivera further opines that Channing's wrist injuries, as documented in photographs, are consistent with injuries caused by handcuffs. Id. at 10. These expert opinions, when combined with Channing's testimony suggesting a causal relationship between the handcuffing and his injuries, could lead a reasonable jury could conclude that D'Agostino deviated from standard handcuffing protocols, injuring Channing in the process.

Of course, certain departures from standard protocol, even ones that place the arrestee at risk of injury, can be justified based on the behavior of the arrestee and other dangers to the officers or bystanders. See O'Brien v. Town of Bellingham, 943

10

F.3d 514, 531 (1st Cir. 2019) ("Application of the reasonableness test 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" (quoting Graham, 490 U.S. at 396)); Lucas v. City of Boston, CIVA 07-CV-10979-DPW, 2009 WL 1844288, at *22 (D. Mass. June 19, 2009) (denying defendants' motion for summary judgment on claim of excessive force in handcuffing, distinguishing cases such as Calvi where the arrestees "posed ongoing threats to the officers," and noting that defendants "acknowledge[d] that [plaintiff] did not" pose a threat). Here, though, D'Agostino testified that Channing followed his instructions and the handcuffing occurred "without any stress." SUF ¶¶ 28, 31. As such, D'Agostino's defense is not that greater-than-usual force was justified by the circumstances; rather, he contends that greater-than-usual force did not occur. See Mem. Supp. Mot. Summ. J. 9-10.

Therefore, a reasonable jury could conclude that the deviation from standard handcuffing techniques was unreasonable and constituted a violation of Channing's clearly established constitutional rights. See Calvi, 470 F.3d at 428; see also Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002) (noting that "the severity of the injury" is relevant to the question whether

11

an officer's actions constituted excessive force (citing Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991)); id. at 16 (reversing judgment for defendant officer because, if properly instructed, jury could have found that plaintiff's "lengthy, painful handcuffing, which had lingering physical effects, amounted to unreasonable force in the particular circumstances").

In sum, the Court concludes that there are genuine disputes as to the material facts of the excessive force claim such that judgment cannot enter as a matter of law. See Bastien v. Goddard, 279 F.3d 10, 12 & n.2 (1st Cir. 2002) (noting factual dispute regarding whether officer checked to make sure handcuffs were not too tight).

C. Vespia, Houghton, and Gillen

Channing also claims that Houghton and Gillen are liable because of their presence during the arrest. See Compl. ¶ 18, ECF No. 1-2; Pl.'s Opp'n 12. However, Channing offers no evidence that either officer participated in or contributed to the allegedly unconstitutional handcuffing. See SDF ¶¶ 29-31. Thus, neither is liable for directly contributing to the alleged misconduct. See Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006) ("[Officer's] mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer.").

Furthermore, Channing alleges that Defendant Vincent Vespia, Jr., the former Chief of Police, and Houghton are subject to supervisory liability. "[A] supervisor may only be held liable where (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmatively link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence . . . amounting to deliberate indifference." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citation and quotation omitted). Although Channing has presented evidence of a purported department-wide policy or practice that led to his alleged physical and constitutional injuries, he has presented no evidence showing an affirmative link with Vespia or Houghton specifically. In fact, Vespia's name does not appear a single time in either the Statement of Undisputed Facts or the Statement of Disputed Facts. The single reference to Houghton merely states that he "arrived on scene as D'Agostino approached the car." SUF ¶ 9.

Accordingly, judgment must enter for Vespia, Houghton, and Gillen on all counts.

D.  Personal Injury and Respondeat Superior Claims

Channing also pleads a count of negligence, labeled as "Personal Injury." "[A] plaintiff may not advance claims of excessive force and negligence predicated on identical facts.

13

Rather, to maintain claims of both negligence and excessive force, a plaintiff must allege at least one fact that is distinct in one claim from the other." Mucci v. Town of N. Providence ex rel. Vallee, 815 F. Supp. 2d 541, 548 (D.R.I. 2011) (citations omitted). Here, Channing's negligence claim is based on facts identical to his excessive force claim, and judgment therefore enters for Defendants on Count II ("Personal Injury").

In Count III, Channing claims liability under the doctrine of respondeat superior. As pled, the negligence claim is the only foundation upon which a respondeat superior claim could possibly be built. See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 769 (1st Cir. 2010) (explaining that respondeat superior is inapplicable to constitutional claims under § 1983 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Thus, judgment must also enter for Defendants on Count III.

E. Intentional Infliction of Emotional Distress

In Count VI, Channing alleges that Defendants are liable for intentional infliction of emotional distress. Compl. ¶¶ 45-47. Under this theory of liability, Channing must show that Defendants acted in an extreme and outrageous manner, intentionally or recklessly causing emotional distress, and that the distress was severe. Shannahan v. Moreau, 202 A.3d 217, 230 (R.I. 2019). At bottom, Channing's claim is that D'Agostino improperly handcuffed him. This claim (and the evidence submitted in support) fails to

14

paint a picture of outrageousness. Thus, judgment must enter for Defendants on Count VI.

F. Municipal Liability

In Count IV, Channing alleges that South Kingstown and its police department, by and through Vespia and Houghton, negligently failed to "hire, retain, train and/or supervise its police officers in the proper use of force and handcuffs[.]" Compl. ¶ 31. Relatedly, in Count V, Channing alleges that Vespia and Houghton bear supervisory liability based on actions and/or inactions that allegedly caused his injuries. Id. ¶¶ 38-42. In their Motion for Summary Judgment, Defendants generously interpret these two counts to allege, in conjunction, a claim of municipal liability under § 1983 based on South Kingstown's failure to train its police officers regarding proper handcuffing techniques. Channing adopts this framing as well, see Pl.'s Opp'n 12-17, so the Court will follow suit.[6]

---

[6] Defendants also argue that because the claims for municipal liability are premised on the allegation that Defendants "deprived [him] of his right to be free from unreasonable seizure secured by the Fourth and Fourteenth Amendments," Channing's municipal claims are premised on a non-existent claim that Defendants lacked probable cause to arrest him. Mem. Supp. Mot. Summ. J. 19-20 (quoting Compl. ¶ 41). However, Channing's excessive force is a claim that D'Agostino effected the seizure in an unreasonable manner. See Graham v. Connor, 490 U.S. 386, 395 (1989). Thus, it is clear to the Court that Channing's municipal claims are premised on the excessive force claim, not a claim of lack of probable cause.

15

A municipality bears liability under § 1983 for the constitutional torts committed by its employees "only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 25 (1st Cir. 2005) (quoting Monell, 436 U.S. at 694). Furthermore, "a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019) (quoting Haley v. City of Boston, 657 F.3d 39, 52 (1st Cir. 2011)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (citation and quotation marks omitted). However, the Supreme Court has left open a narrow window for single-incident claims, stating that "evidence of a single violation of federal rights, accompanied

by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 409 (1997) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 & n.10 (1989)). "The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64.

In general, single-incident liability for failure to train attaches only where the municipality does not provide any training on the topic at issue. See, e.g., Shadrick v. Hopkins Cty., Ky., 805 F.3d 724, 740 (6th Cir. 2015) (denying defendants' motion for summary judgment where defendant "did not have a training program" to guide nurses at detention center in treating inmates and avoiding constitutional violations); Thomas v. Cumberland Cty., 749 F.3d 217, 225 (3d Cir. 2014) (vacating grant of defendant's motion for summary judgment where prison with frequent fights among inmates failed to provide de-escalation and intervention training to correctional officers); Williams v. County of Alameda, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) (noting that successful single-incident claims "generally involve incidents arising from a total lack of training, not simply an assertion that a municipal employee

17

was not trained about 'the specific scenario related to the violation'" (quoting Connick, 563 U.S. at 67)); Jenkins v. Woody, 3:15CV355, 2017 WL 342062, at *17 (E.D. Va. Jan. 21, 2017) (denying defendant's motion for summary judgment where "subordinates did not receive any training on the particular issue at stake" (emphasis omitted)).

Conversely, where a municipality trains its employees on the topic at issue, single-incident liability generally cannot be established, even if the plaintiff asserts that more training was necessary, because it is not "patently obvious" that the constitutional violation would result. See, e.g., Connick, 563 U.S. at 64, 67 (affirming summary judgment for defendants, despite evidence that employees "were not trained about particular [applications of the constitutional rule] or the specific scenario related to the violation in [plaintiff's] case[,]" because "[t]hat sort of nuance simply cannot support an inference of deliberate indifference"); Leibel v. City of Buckeye, CV-18-01743-PHX-DWL, 2020 WL 516671, at *3 (D. Ariz. Jan. 31, 2020) (dismissing claim that city failed to sufficiently train officers regarding autism where "the City provided crisis intervention training to its officers and separately provided additional materials that touch[ed] upon autism specifically" (citation and quotations omitted)); Serna v. City of Bakersfield, 117CV01290LJOJLT, 2019 WL 2164631, at *6 (E.D. Cal. May 17, 2019) (granting summary judgment

18

where "Plaintiffs d[id] not argue that [the municipality] utterly failed to train [the officer] on how to interact with individuals with dementia, but instead rest[ed] their argument on a failure to do 'post-academy' training").

Here, Channing alleges that the municipality failed to sufficiently train its police officers regarding handcuffing techniques, and that this deficiency led to the application of excessive force. See Pl.'s Opp'n 12-14. He does not, however, point to any other instances of unconstitutional handcuffing by South Kingstown police officers, thus leaving him with a single-incident theory of liability.[7] See id. at 12-17. Importantly, there is undisputed evidence that D'Agostino received training regarding handcuffing techniques at the police academy, and Channing does not point to any specific deficiencies in that training. See D'Agostino Dep. 23:24-24:13, ECF No. 23-4; Pl.'s Opp'n 12-14. Channing's main contention is that D'Agostino should have been given refresher courses to make sure that he maintained his skill and knowledge of safe handcuffing protocols. Pl.'s Opp'n 14. However, without a pattern of previous violations, the lack

---

[7] Based on a review of records from the South Kingstown Police Department, Rivera states that twenty-three use-of-force incidents between 2009 and 2017 South Kingstown "were the result of officers attempting to handcuff individuals." Rivera Suppl. Report 20. However, there is no evidence that any of these incidents involved excessive force or any other constitutional violations. See id.

19

of periodic trainings does not evince deliberate indifference on the part of municipal policymakers. Accordingly, judgment enters for Defendants on Counts IV and V.[8]

IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment, ECF No. 23, is DENIED as to the claim of excessive force as pled against Defendant John T. D'Agostino and GRANTED in all other respects. Additionally, Defendants' September 9, 2020 Oral Motion for Reconsideration of the Court's Order denying Defendants' Motion to Strike Plaintiff's Expert Witness is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date: June 21, 2021

---

[8] Rivera's report also delves into purported deficiencies in the department's documentation of uses of force and the reviews and investigations of those reports conducted by supervisors. Specifically, he opines that the two-page use-of-force form used by the police is insufficiently detailed, and that the department's yearly analysis of use-of-force trends is too infrequent. Rivera Suppl. Report 16-18. Channing's papers do not make clear whether he is arguing that these policies and practices form a separate basis of liability. See Pl.'s Opp'n 16-17. Nevertheless, these practices are too distant from the operative facts at bar to qualify as the moving force behind the manner in which Channing was handcuffed.